UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

IDORA KIMBRO,

        Plaintiff,                          Case No. 2:09-cv-366
                                                JUDGE GREGORY L. FROST
    v.                                      Magistrate Judge E. A. Preston Deavers

BELLAIRE LOCAL SCHOOLS, et al.,

        Defendants.

## OPINION AND ORDER

This matter is before the Court for consideration of Defendants' motion for summary judgment (Doc. # 25), Plaintiff's memorandum in opposition (Doc. # 29), and Plaintiffs' reply memorandum (Doc. # 30). For the reasons that follow, this Court finds the motion well taken.

### I. Background

Plaintiff, Indora Kimbro, is a 58-year-old African-American female who has worked since 1973 as a regular elementary school teacher for Defendant, Bellaire Local School District ("Bellaire"). Derek Ault is a 28-year-old Caucasian male who worked as an elementary school intervention specialist at Bellaire from 2002 until 2007. In August 2007, Defendants John Stinoski, superintendent of Bellaire, Kevin Roseberry, assistant superintendent of Bellaire, and Charles Tucker, principal of Bellaire's elementary school, interviewed candidates for the posted position of assistant principal at the elementary school. Both Kimbro and Ault applied and interviewed for the position. The interview committee unanimously recommended that the Board of Education ("Board") promote Ault.

Kimbro and Ault both met basic qualifications for the assistant principal position.

1

Kimbro holds a bachelor's degree in elementary education from the St. Clairsville branch of Ohio University, a teaching certificate from the Ohio Department of Education ("ODE"), a master's degree in education administration from the University of Dayton, and a principal's certificate from ODE.  Ault holds a bachelor's degree in elementary education from West Liberty State College, a teaching license from ODE, a master's degree in education from Marygrove University, a master's degree in educational leadership and administration from Salem International University, and a principal's license from ODE.  However, Kimbro and Ault's backgrounds differed in length and type of teaching experience, amount of leadership training, and expertise in the area of special education.  Kimbro and Ault also differed in their views of the role of the assistant principal position.

Kimbro's qualifications include her 34 years doing an "excellent job" as a general classroom elementary school teacher.  (Doc. # 21, at 32.)  Stinoski identified "very effective[] and very efficient[]" management of students' behavior as one of Kimbro's teaching strengths.  (*Id.* at 82.)  Kimbro's professional development, aside from her master's degree and classes to reinstate her lapsed principal's certificate, consisted of an online workshop on bullying and district-provided in-service workshops.  Despite not having any course work in special education since 1973, Kimbro demonstrated a willingness to work with "mainstreamed" special education students in her regular classroom.  Furthermore, Kimbro participated in the school's "individual action technique" ("IAT") process, which seeks to help a teacher intervene with struggling students and identify for further testing students whom the teacher suspects have a learning disability.  If, as a result of the IAT process, a student is identified as having a learning disability, an intervention specialist prepares an individual education plan (IEP) for the student.

2

However, Kimbro had never participated in the drafting of an IEP, nor had she participated in the amendment or dispute process for an IEP. Kimbro viewed discipline, responding to behavior problems, and communication with parents as important duties of the assistant principal, but she did not view participation in the special education process as an important duty of the position.

Ault's background included five years as an intervention specialist teaching students with severe behavior disorders and cognitive disabilities. This experience included drafting and monitoring special education students' IEPs. Also, other teachers sometimes consulted with Ault about students with habitual behavior problems. In these cases, Ault observed the student in class and performed a "functional behavior analysis" that resulted in a specially tailored plan for behavior improvement.

During the time when the school operated without an assistant principal, Ault occasionally filled in for the principal to help with discipline problems. Ault's professional development, in addition to his graduate coursework, included 40 hours of training in teaching leadership skills through participation in the school's grant-funded school-improvement process. As part of that work, state school improvement consultants selected Ault to serve as "coach" for the elementary building. Accordingly, Ault worked with a team to develop ideas to improve student performance on the state standardized achievement test. Ault testified that when he interviewed for the position, he viewed the primary responsibilities of the assistant principal as special education and discipline.

The interview process employed by Stinoski, Tucker, and Roseberry involved three parts: (1) an oral interview, (2) written responses to six hypothetical scenarios and the drafting of a sample introductory letter to parents, and (3) an evaluation of the candidates' strengths in

relation to the "Administrative Leadership Skills" checklist.  The "Administrative Leadership Skills" checklist included six items: (1) knowledge/experience with standards-based education, (2) knowledge/experience with state assessments, (3) knowledge/experience with special education, (4) experience with building behavior management, (5) demonstration of leadership qualities by example, and (6) commitment to longevity in the position.  (Doc. # 24, at 20.)

During the oral interview, each committee member separately scored the candidates' responses.  Ault scored higher in aggregate than Kimbro on the oral interview, largely because Tucker and Roseberry did not favor Kimbro's view that the assistant principal's priority should be communication with parents.  Also, Kimbro's assertion that she wanted to "stay the course" disappointed Tucker and Roseberry.  (Doc. # 22, Tucker Dep., at 64; Doc. # 23, Roseberry Dep., at 49.)

After the candidates provided their written responses to the hypothetical scenarios and their sample introductory letters to parents, the committee discussed the candidates' responses and letters and arrived at a consensus score for each.  Kimbro scored better on the letter to the parents, whereas Ault scored better on the hypothetical scenarios section.  Kimbro received three out of six marks on the "Administrative Leadership Skills" checklist, whereas Ault received marks for all six listed items.

After the committee recommended that the Board hire Ault for the assistant principal position, Kimbro filed a charge of race, gender, and age discrimination with the Ohio Civil Rights Commission.  In December 2007, that commission found probable cause to believe that the school district had failed to promote Kimbro on an unlawful basis.  (Doc. # 29, at 36.)  The commission has conducted neither further proceedings nor an administrative hearing.  Plaintiff

4

subsequently initiated the instant action, asserting claims for race, age, and gender discrimination under various provisions of Ohio Rev. Code Chapter 4112 and 42 U.S.C. § 1983 predicated on the Fourteenth Amendment's Equal Protection Clause. (Doc. # 1.) Defendants subsequently moved for summary judgment on April 19, 2010. (Doc. # 30.) The parties have completed briefing the issues involved, and the motion is now ripe for disposition.

## II. Discussion

### A.  Standard Involved

Summary judgment is appropriate "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c)(2). The Court may therefore grant a motion for summary judgment if the nonmoving party who has the burden of proof at trial fails to make a showing sufficient to establish the existence of an element that is essential to that party's case. *See Muncie Power Prods., Inc. v. United Tech. Auto., Inc.*, 328 F.3d 870, 873 (6th Cir. 2003) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986)).

In viewing the evidence, the Court must draw all reasonable inferences in favor of the nonmoving party, which must set forth specific facts showing that there is a genuine issue of material fact for trial. *Id*. (citing *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)); *Hamad v. Woodcrest Condo. Ass'n*, 328 F.3d 224, 234 (6th Cir. 2003). A genuine issue of material fact exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Muncie*, 328 F.3d at 873 (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). Consequently, the central issue is " 'whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided

that one party must prevail as a matter of law.' " *Hamad*, 328 F.3d at 234-35 (quoting *Anderson*, 477 U.S. at 251-52).

### B. Analysis

Plaintiff brings her claim of unlawful discrimination under both Ohio Rev. Code Chapter 4112 and 42 U.S.C. § 1983, which the parties agree provide independent bases for recovery. *See generally Day v. Wayne County Bd. of Auditors*, 749 F.2d 1199, 1205 (6th Cir. 1984); *Birch v. Cuyahoga County Probate Court*, 392 F.3d 151, 168-69 (6th Cir. 2004). However, the same legal analysis applies to applies to both statutory bases. *See Williams v. Ford Motor Co.*, 187 F.3d 533, 538 (6th Cir. 1999) (claims of discrimination under Ohio Rev. Code Chapter 4112 have the analysis as under Title VII);[1] *Smith v. City of Salem*, 378 F.3d 566, 577 (6th Cir. 2004) (claims of discrimination under § 1983 mirror the analysis under Title VII).

In order to establish an employment discrimination claim, a plaintiff may rely on direct evidence of discrimination or circumstantial evidence that would allow an inference of discriminatory treatment. *Johnson v. Kroger Co.*, 319 F.3d 858, 864-65 (6th Cir. 2003) (citing *Johnson v. Univ. of Cincinnati*, 215 F.3d 561, 572 (6th Cir. 2000)). Direct evidence, if believed, requires a factfinder to conclude without the aid of inferences that unlawful discrimination at least partly motivated the employer in the challenged employment action. *Jacklyn v. Shering-Plough Healthcare Prods. Sales Corp.*, 176 F.3d 921, 926 (6th Cir. 1999). Such direct evidence might include facially discriminatory employment policy documents or express statements by

---

[1] The Supreme Court of Ohio has " 'determined that federal case law interpreting Title VII of the Civil Rights Act of 1964, Section 2000e *et seq.,* Title 42, U.S.Code, is generally applicable to cases involving alleged violations of [Ohio Rev. Code] Chapter 4112.' " *Hampel v. Food Ingredients Specialties, Inc.*, 89 Ohio St.3d 169, 175, 729 N.E.2d 726, 731 (2000) (quoting *Plumbers & Steamfitters Joint Apprenticeship Comm. v. Ohio Civ. Rights Comm.*, 66 Ohio St.2d 192, 196, 421 N.E.2d 128, 131 (1981)).

decision makers that indicate an intent to discriminate against employees in the protected group. *Nguyen v. City of Cleveland*, 229 F.3d 559, 563 (6th Cir. 2000).

No direct evidence exists in this case. Plaintiff denies ever being subject to or overhearing racist, sexist, or ageist statements by anyone employed by Bellaire. (Doc. # 19, Kimbro Dep., at 138-39.) Plaintiff also denies ever seeing a Bellaire document that expressed racist, sexist, or ageist policies or sentiments. (*Id.* at 139-40.) Plaintiff has also failed to produce evidence of any such statement or document in the record before the court, but rather concedes that "no direct evidence exists." (Doc. # 29, at 12.) Therefore, Plaintiff must rely on circumstantial evidence to prove her claims of unlawful discrimination.

Proof of discrimination by circumstantial evidence requires analysis of the familiar three-part *McDonnell Douglas* framework. First, a plaintiff creates a presumption of discrimination by making a *prima facie* showing that (1) she is a member of a protected class, (2) she was not promoted, (3) she was qualified for the promotion, and (4) a similarly situated individual who is not in the protected class received the promotion. *See Dews v. A.B. Dick Co.*, 231 F.3d 1016, 1021 (6th Cir. 2000); *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973). Defendants concede that Plaintiff has presented a *prima facie* case. (Doc. #25, at 15.) The record establishes that Plaintiff is an African-American female over the age of 40 (Doc. # 1, at 2) and that she was qualified for but did not receive the promotion to the assistant principal position. (*Id.* at 3.) Plaintiff has thus made a *prima facie* showing creating a presumption of discrimination.

Under the framework's second step, the burden shifts to the defendant to rebut the presumption of discrimination by proffering a "legitimate, nondiscriminatory reason for its

7

decision." *Dews,* 231 F.3d at 1021.  The defendant bears only a burden of production, not persuasion, and the burden involves no credibility assessment.  *Reeves v. Sanderson Plumbing Prods, Inc.*, 530 U.S. 133, 142 (2000); *see also St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 509 (1993).  Here, Defendants assert that the interview committee identified special education and student discipline as the two primary duties of the assistant principal position.  (Doc. # 25, at 15.)  Defendants furthermore claim that the committee selected Ault for the promotion because, although Kimbro was a qualified candidate, Ault exhibited the most knowledge and experience in these areas and performed best during the interviews.  (*Id.*)

Citing *Kline v. Tennessee Valley Authority*, 128 F.3d 337 (6th Cir. 1997), Plaintiff argues that summary judgment is inappropriate on issues of fact and motive related to pretext.  (Doc. # 19, at 13.)  In *Kline*, the issue was whether the employer, during a reselection process, "in fact made a good faith determination" whether a previously hired candidate was better qualified for the job than the plaintiff.  *Id.* at 342.  Unlike Defendants in this case, the employer in *Kline* compared the candidates solely on objective criteria.  *Id*.  The reselection process consisted entirely of a review of the candidates' resumes and personnel records.  *Id*.  The employer did not conduct interviews that would have given the plaintiff an opportunity to demonstrate experience not reflected in his objective qualifications.  *See Kline v. Tennessee Valley Auth.*, 1 F.3d 1241, 1993 WL 288280*,* at *5 (6th Cir. 1993) (unpublished table decision).  In contrast, the interview committee in the instant case conducted a three-part screening process that assessed candidates' objective *and* subjective qualifications.

Plaintiff also relies on the holding that a jury's "disbelief of the reasons put forward by the defendant (particularly if disbelief is accompanied by a suspicion of mendacity) may,

8

together with the elements of the *prima facie* case, suffice to show intentional discrimination." *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 511 (1993).  However, this standard is permissive, not compulsory, and the "jury may not reject an employer's explanation. . .unless there is sufficient basis *in the evidence* for doing so."  *Manzer v. Diamond Shamrock Chems. Co.*, 29 F.3d 1078, 1083 (6th Cir. 1994).  The question at issue "is not whether the employer's reasons are right, but whether the employer's description of its reasons is honest."  *Young v. Oakland County*, 351 F. Supp. 2d 653, 658 (E.D. Mich 2004) (quoting *Karitois v. Navistar Int'l Transp. Corp.*, 131 F.3d 672, 677 (7th Cir. 1997)).  In *Kline*, where the employer limited its assessment to objective criteria as represented in resumes and personnel files, the lack of a meaningful interview process could have provided a reasonable jury a sufficient basis for rejecting the employer's proffered reason.  Thus, evidence justified denial of summary judgment.  But where the employer can provide evidence that "establish[es] its reasonable reliance on the particularized facts that were before it at the time the decision was made," summary judgment is not precluded.  *Smith v. Chrysler Corp.*, 155 F.3d 799, 807 (6th Cir. 1998).  In the present case, a thorough, documented screening process–including interviews and assessment of written responses to hypothetical questions–provides particularized substance to the employer's proffered reason.  Accordingly, the analysis proceeds to the third step in the *McDonnell Douglas* framework.

Under the framework's third step, once an employer proffers a legitimate, nondiscriminatory reason for its decision, the burden shifts to the plaintiff to prove by a preponderance of the evidence that the proffered reason is pretext.  *Manzer*, 29 F.3d at 1083.  To survive a motion for summary judgment, the plaintiff must prove that the employer's reason (1)

had no basis in fact, (2) did not actually motivate the challenged conduct, or (3) is insufficient to explain the challenged conduct. *Id.* at 1084. This proof must be by "sufficient evidence from which the jury could reasonably reject [the defendants'] explanation and infer that the defendants intentionally discriminated against [the plaintiff]." *Johnson*, 319 F.3d at 866.

The centerpiece of Plaintiff's pretext argument is that her 36 years of broad-based, "exemplary" teaching experience made her a superior candidate to Ault. (Doc. # 29, at 9.) Under settled Sixth Circuit precedent, a comparison of individuals' qualifications, in the absence of other probative evidence, provides evidence of pretext sufficient to preclude summary judgment only where "the rejected applicant's qualifications [are] so significantly better than the successful applicant's qualifications that no reasonable employer would have chosen the latter applicant over the former." *Bender v. Hecht's Dep't Stores*, 455 F.3d 612, 626-27 (6th Cir. 2006) (internal citations omitted).

Plaintiff's teaching experience, including her handling of "a broad range of teaching and disciplinary duties" (Doc. # 29, at 10), "knowledge of special education issues," (*Id.*) and "extensive experience with student management and discipline" (*Id.* at 11), makes her a qualified candidate for the assistant principal position. However, Ault's qualifications, although different in character, at least equal Plaintiff's. Ault's recent coursework in special education and experience designing and implementing IEPs provide a crucial distinction from Plaintiff. *See* Doc. # 30, at 10. Even if Plaintiff's 34 years of teaching make the breadth of her experience superior to that of Ault, who taught for only five years, the depth of Ault's knowledge of and experience in handling special education issues distinguishes him as a candidate.

Plaintiff argues that, in focusing on the assistant principal's special education duties,

Defendants ignored "the 'elephant in the living room,' " meaning the advanced skill in the "education and communication components" of the assistant principal position Plaintiff had by virtue of her teaching experience. (Doc. # 29, at 15, 20.) Plaintiff suggests that Defendants treated education skills "as if [they] did not matter in this case." (*Id*. at 21.) However, Defendants argue that Plaintiff's view on the relative importance of the job's duties and qualifications is irrelevant. (Doc. # 30, at 11.) This Court agrees. *See Wrenn v. Gould*, 808 F.2d 493, 502 (6th Cir. 1987) (a job applicant's "perception of his competence, and the incompetence of those competing against him, is irrelevant"). The law affords employers "great flexibility when selecting management personnel" and what matters is the employer's perceptions of the applicant's qualifications. *Browning v. Dep't of the Army*, 436 F.3d 692, 698 (6th Cir. 2006). As such, Defendants were within their prerogative in emphasizing special education and determining that they "wanted to hire someone whose knowledge and experience would help him or her review and oversee the school's IEP process." (Doc. # 30, at 10.) Given Defendants' emphasis on the assistant principal's role in special education, Plaintiff was, *at best*, equally qualified with Ault for the position. Therefore, Plaintiff may not rely solely on a comparison of qualifications to meet her burden. Instead, Plaintiff must advance her pretext argument with additional probative evidence of discrimination. *Bender*, 455 F.3d at 626-27.

Plaintiff adduces discrimination in four additional facts : (1) Defendants' use of subjectivity in the promotion process, (2) a discrepancy in emphasis of the assistant principal's duties as between the 2007 job posting and a previous posting and job description, (3) the timing of the job opening in 2007, and (4) the historical demographics of Bellaire's administrators. None provides probative evidence in this case.

Plaintiff and Defendants agree that the interview process involved subjective assessments of the candidates' strengths and weaknesses.  *See* Doc. # 29, at 20; Doc. # 25, at 29.  As Plaintiff points out, subjective selection procedures are not illegal *per se*.  *Grano v. Dep't of Dev.*, 699 F.2d 836, 837 (6th Cir. 1983).  Nevertheless, courts have closely scrutinized subjective selection procedures when, as here, the decision makers are not members of the plaintiff's protected class. *See Sims v. Cleland*, 813 F.2d 790, 794 (6th Cir. 1987).  Even so, unless a plaintiff demonstrates that an employer uses subjective procedures as a pretext to mask discrimination, such procedures do not support an inference of discrimination.  *Browning*, 436 F.3d at 697.

Plaintiff contends that Defendants manipulated the scoring process to favor Ault's strengths and to downplay her own strengths.  (Doc. # 29, at 27-29.)  In particular, Plaintiff points to Defendants' use of its "Administrative Leadership Skills" checklist, on which Ault received a checkmark demonstrating proficiency in the categories of "knowledge/experience with special education" and "experience with building behavior management," whereas Plaintiff did not.  (Doc. # 29, at 21-22.)  Essentially, Plaintiff contends that Defendants undervalued her skills.  But "[q]uestioning the [employer's] hiring criteria is not within the province of this court, even if the [employer's] hiring process was entirely subjective."  *Browning*, 436 F.3d at 698. This is because "[t]he law does not require employers to make perfect decisions, nor forbid them from making decisions that others may disagree with."  *Hartsel v. Keys*, 87 F.3d 795, 801 (6th Cir. 1996).  Most importantly, the evaluator's perception of the candidate's qualifications is "what matters," not the candidate's perception of her own qualifications.  *Browning*, 436 F.3d at 698.  Therefore, without a showing of discriminatory animus,  Defendants' determination that Ault was proficient in the areas of special education and behavior management but Plaintiff was

not does not amount to probative evidence of pretext.

Plaintiff also raises the issue of a discrepancy between the 2007 posting for the assistant principal position and a posting that was used for the same position in 2004. (Doc. # 29, at 6-7.) The 2007 posting specifies "discipline and special education" as the position's primary responsibilities. (Doc. # 24, at 6.) In contrast, the 2004 posting specifies only that "This position must exemplify a high degree of leadership ability as it applies to the building and district leadership team." (Doc. # 24, at 3.) Plaintiff argues that this difference in the postings, in conjunction with a job description created in 2003 that lists special education as one of 32 "performance responsibilities," should be read as probative evidence of pretext. The emphasis on special education in 2007, Plaintiff argues, was added in order to favor Ault. (Doc. # 29, at 8.)

The value of the job description itself is limited, however, because "employers are *not* rigidly bound by the language in a job description." *Browning*, 436 F.3d at 692 (citing *Wrenn v. Gould*, 808 F.2d 493, 502 (6th Cir. 1987)). Plaintiff stretches to achieve the conclusion that a deviation exists at all; special education *is* one of the job description's listed "performance responsibilities." Even so, Defendants point out that the job description "merely lists all possible tasks and responsibilities" for the job and that their order or appearance does not relate to their relative importance. (Doc. # 30, at 8.) Even assuming *arguendo* that the 2007 posting reflects a new emphasis on special education, Plaintiff's view on the relative importance of job duties and qualifications is irrelevant. *Wrenn*, 808 F.2d at 502. Roseberry, Stinoski, and Tucker do agree that the emphasis on special education favored a special education teacher, such as Ault. (Doc. # 23, Roseberry Dep., at 42-43, 45; Doc. # 21, Stinoski Dep., at 33; Doc. #22, Tucker Dep., at 48-49.) But this is no surprise: Roseberry and Tucker both testified that special education was of

13

primary importance when they served in the assistant principal position. (Doc. # 23, Roseberry Dep., at 11-14; Doc. # 22, Tucker Dep., at 30-31, 37-41.) A special education teacher's experience would be a distinguishing trait in selection for the job. Therefore, even assuming a discrepancy, the fact that Ault's experience worked to his advantage fails to provide probative evidence of pretext.

Plaintiff also adduces evidence of pretext in the timing of the 2007 job posting, which occurred shortly after Ault gained his principal's certification. The position stood empty for nearly two and a half years after Tucker's promotion to principal in late 2004. (Doc. # 29, at 1, 6.) Defendants explain that Bellaire did not fill the position during 2005 and 2006 because of fiscal deficits. (Doc. # 21, Stinoski Dep., at 44-50; Doc. # 23, Roseberry Dep., at 8.) Plaintiff neither objects to the admissibility of Defendants' explanation nor identifies evidence in the record that contradicts Defendants' explanation. However, the burden is hers to "produce sufficient evidence from which the jury may reasonably reject the employer's explanation." *Warfield v. Lebanon Corr. Inst.*, 181 F.3d 723, 730 (6th Cir. 1999) (quoting *Manzer*, 29 F.3d at 1083). Therefore, the timing of the job posting fails to provide probative evidence of pretext.

Finally, Plaintiff vaguely alludes to evidence of pretext in the demographics of Bellaire administrators. (Doc. # 29, at 1, 15, 19.) Statistical data may, if unrebutted, create an inference of discrimination. *Barnes v. GenCorp, Inc.*, 896 F.2d 1457, 1466 (6th Cir. 1990). However, such statistics "must show a significant disparity and eliminate the most common nondiscriminatory explanations for the disparity." *Bender*, 455 F.3d at 622 (quoting *Barnes*, 896 F.2d at 1466). Here, Defendants counter that Plaintiff misstates Bellaire's hiring record by asserting that Bellaire has a "track record of only hiring white males," when in actuality Bellaire

14

has recently employed three females as administrators, although no African-Americans. (Doc. # 29, at 15.)  Plaintiff points to no statistical evidence about the number of openings, relevant hiring pools, qualifications of applicants, or relevant decision makers.  Plaintiff thus makes no effort to eliminate the most common nondiscriminatory explanations for the disparity.  As a result, on this record the issue of demographics fails to provide probative evidence of pretext.

Because Plaintiff fails to provide probative evidence that Defendants' choice of Ault as the most qualified candidate was pretext for a discriminatory motive, no reasonable jury could decide in Plaintiff's favor.  Therefore, Plaintiff's claims of race, gender, and age discrimination fail on the merits.  Consequently, this Court **GRANTS** Defendants' motion for summary judgment.  (Doc. # 25.)

Having concluded that Plaintiff's claims are without merit, the Court does not address the moot issues of whether the Board is potentially liable under a *Monell* analysis; whether Plaintiff's pending age claim before the Ohio Civil Rights Commission precludes this Court's consideration of the age claim; whether the individual defendants, in their official capacities, are immune from liability under Ohio Rev. Code § 4112 *et seq.*; and whether Plaintiff could even pursue punitive damages.

### III. Conclusion

For the foregoing reasons, the Court **GRANTS** Defendants' motion for summary judgment. (Doc. # 25.) The Clerk shall enter judgment accordingly and terminate this case upon the docket records of the United States District Court for the Southern District of Ohio, Eastern Division, at Columbus.

**IT IS SO ORDERED**.

                                              /s/ Gregory L. Frost
                                          GREGORY L. FROST
                                          UNITED STATES DISTRICT JUDGE